UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

────────────────────────────────

DEZERAY M. ROBLERO-BARRIOS,                    Civil No. 11-2281 (MJD/FLN)

          Plaintiff,

      v.                                       **REPORT AND RECOMMENDATION**

MINNESOTA DEPARTMENT OF
CORRECTIONS, JOAN FABIAN,
HARVEY NELSON, DAVID CRIST,
LISA CORNELIUS, PATT ADAIR,
COLLIN GAU, KATHY LUDWIG,
PAUL BURGESS, Lt. DIANE JOHNSON,
Sergeant WOLBECK, CHARLES
THOMPSON, DAN KRIPPNER,
DAN SLETTA, DAVE CHRISTIANSON,
ROSS NOMAN, FAYE WARZECHA,
KEVIN KIRCH, PAT COURTNEY,
Sergeant DALE KANEN, MICHELLE
SMITH, SUE ARMSTRONG, MINNESOTA
DEPARTMENT OF CORRECTIONS
RECORDS DEPARTMENT, STEVEN
RENSTROM, DENISE EHLENZ,
SPENCER MATTSON, Lt. MICHAEL
WALTER PARKS, SARA HARD,
NANNETTE LARSON, MARK FREEMAN,
CHARLOTTE MOORE, A. SULLIVAN,
ELIZABETH GUEVARA, MARK
FREEMAN, MARK THEILAN, SHERYL
VEZNEER, Chaplain HOBSON,
Lt. DOUGLAS JOHNSON, LYNNE
DINGLE, PHYSICAL THERAPIST LUKE,
JOHN KING, and JOHN and JANE DOES,

          Defendants.

────────────────────────────────

     This case is before the undersigned United States Magistrate Judge on Plaintiff's

motion for leave to proceed in forma pauperis, ("IFP"), as permitted by 28 U.S.C. §

1915(a)(1). (Docket No. 2.) The matter has been referred to this Court for report and

recommendation under 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons discussed below, the Court will recommend that all of Plaintiff's claims, except his Eighth Amendment claim against Defendant Dan Krippner, be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## I.  BACKGROUND

Plaintiff is attempting to bring five separate claims against the Minnesota Department of Corrections, ("DOC"), and approximately 40 past and present DOC employees. Plaintiff's claims arose out of various events that allegedly occurred while he was incarcerated at DOC facilities during 2008 and 2009.[1]

Plaintiff initially claims that his Eighth Amendment rights were violated in July 2008, while he was incarcerated at the Minnesota Correctional Facility in St. Cloud, Minnesota, ("MCF-SCL").  On July 19, 2008, Plaintiff allegedly was escorted to a shower facility by a DOC correctional officer, Defendant Dan Krippner.  After Plaintiff finished his shower, Krippner allegedly "entered the shower area, handcuffed the plaintiff, and then grabbed the plaintiff's upper right bicep area [and] as he pinched and twisted the plaintiff's skin with his hands... he stated 'So, you like to assault Correctional Officers and little kids, well this is what you get although you deserve a lot more than that.'" (Complaint, [Docket No. 1], p. 13,

---

[1]  It appears from Plaintiff's submissions that when he commenced this action he was a patient at the Minnesota Sex Offender Program, ("MSOP"), in Moose Lake, Minnesota.  However, according to a website maintained by the Minnesota Department of Correction, (www.doc.state.mn.us), Plaintiff is currently incarcerated at the Minnesota Correctional Facility in Lino Lakes, Minnesota.  If Plaintiff was in prison when he filed his complaint, then this action would be subject to all of provisions of the Prison Litigation Reform Act, ("PLRA"), including the fee payment requirements prescribed by 28 U.S.C. § 1915(b), and the initial screening requirement prescribed by 28 U.S.C. § 1915A.  For now, however, the Court will assume that Plaintiff was still at MSOP when this action was initiated, and he was not a "prisoner" subject to the PLRA at that time.

¶ 10.) As Plaintiff was being escorted back from the shower area, he passed by several other correctional officers who directed various taunting remarks and gestures at Plaintiff. The following day, Plaintiff noticed "2 extremely large dark bruises on his right upper bicep area" where Defendant Krippner had pinched him. (Id., p. 14, ¶ 14.)

Plaintiff tried to contact a supervisory official, Defendant Diane Johnson, to complain about the pinching incident, but Johnson initially refused to talk to Plaintiff, and later told Plaintiff to present his complaint in a "kite" – i.e., a formal written grievance form. Plaintiff apparently did file a kite about the matter, and Defendant Patt Adair, the Warden at MCF-SCL, told him that "'the alleged assault is under investigation.'" (Id., p. 15, ¶ 22.) Two days later, an investigation team took photos of Plaintiff's alleged injuries, and recorded a statement by Plaintiff. (Id., pp. 15-16, ¶s 23-24.) Plaintiff supplemented that information by writing a letter addressed to several high ranking DOC officials, including Defendants Joan Fabian, David Crist and Lisa Cornelius. (Id., p. 16, ¶ 25.) He also sent a kite about the incident to a prison investigator, Defendant Ross Noman. (Id., p. 16, ¶ 26.) Plaintiff received a response to his letter, which assured him that the alleged assault would be investigated, and two correctional officers who allegedly were aware of the incident were moved to different job assignments. (Id., p. 16, ¶s 27-28.)

Plaintiff allegedly remained at MCF-SCL for less than three weeks after the alleged pinching and taunting incident occurred. During that time, he allegedly was fearful of further assaults and "retaliation," but there are no allegations suggesting that any other incidents occurred. (Id. pp. 16-17, ¶ 29.)

Plaintiff's second claim is brought under the federal Freedom of Information Act, ("FOIA"), 5 U.S.C. § 552. Plaintiff alleges that on or about November 5, 2007, he sent a

3

letter to the DOC, seeking information about his DOC "Base File."  (Id., p. 17, ¶ 1.)

Thereafter, Plaintiff submitted several more similar requests to various individual DOC

officials, including Defendants Faye Warzecha, Joan Fabian, Kevin Kirch, Pat Courtney,

and Steven Renstrom.  (Id., pp. 17-21, ¶s 2-24.)  To date, Plaintiff allegedly has not

received the information that he has been seeking under FOIA.  (Id., pp. 18-19, ¶ 8.)

Plaintiff's third claim is entitled "Loss of or Damaged/Destruction of Property."  This

claim stems from Plaintiff's transfer from the Minnesota Sex Offender Program to the

Minnesota Correctional Facility in Lino Lakes, Minnesota, ("MCF-LL"), which apparently

occurred in December 2008.  During the course of that transfer, Plaintiff allegedly lost some

of his personal property, including some clothes, (socks, underwear, several shirts, a pair

of pants, a pair of tennis shoes, etc.), and a "TENS unit."[2]  After Plaintiff arrived at MCF-LL,

he contacted several DOC employees, and asked them to help him track down his missing

property.  (Id., pp. 22-24, ¶s 2-19.)  Plaintiff was later transferred from MCF-LL to the

Minnesota Correctional Facility in Stillwater, Minnesota, ("MCF-STW"), and he continued

to try to recover his missing property.  Some DOC employees tried to help Plaintiff by

providing information about the status of the missing property, or by offering suggestions

about how to recover it.  (Id., ¶s 2, 3, 5, 7, 9, 11, 13, 15, 17, 18 and 19.)  Plaintiff alleges

that his missing clothing "was never again in his possession," (id., p. 22, ¶ 1), but the

complaint does not indicate whether Plaintiff ever recovered his TENS unit.

Plaintiff's fourth claim involves a housing assignment problem that apparently arose

while Plaintiff was at MCF-STW.  (Id., pp. 24-25, ¶s 1-5.)  The allegations offered in support

_____

[2]  Plaintiff presumably is referring to a transcutaneous electrical nerve stimulation
machine that uses electrical current to relieve pain.

4

of this claim are scanty, and difficult to decipher.  Plaintiff appears to be claiming that in August 2009 he was assigned to a segregated housing unit for ten days without being afforded a hearing or other due process protections.  However, the complaint does not indicate who assigned Plaintiff to segregated confinement, or why he was sent there.  Furthermore, Plaintiff does not allege that he might have avoided segregated confinement if he had been afforded due process.

Plaintiff's fifth and final claim is a "freedom of religion" claim, which consists of two brief paragraphs.  In the first paragraph, Plaintiff alleges that on May 19, 2008, he submitted a kite to Defendant Patt Adair, which informed her that Plaintiff "was being denied religious items provided by the institution for his practiced Wiccan religion." (Id., p. 25, ¶ 1.)  In the second paragraph, Plaintiff alleges that Defendant Hobson, a prison chaplain, delivered Defendant Adair's response to Plaintiff's kite, which indicated that "defendant Adair [was] again denying plaintiff his request for a religious bag that is also used by the Native Americans but with different herbs and items not used by the Native Americans," which would not put Plaintiff "at odds with the Native Americans." (Id., pp. 25-26, ¶ 2.)  Based on just these allegations alone, Plaintiff claims that Defendant Hobson "discriminated against" him because of his religion.  (Id.)

## II.  DISCUSSION

An IFP application will be denied, and the action will be dismissed, if the IFP applicant has filed a complaint that fails to state a claim on which relief may be granted.  28 U.S.C. § 1915(e)(2)(B)(ii); Atkinson v. Bohn, 91 F.3d 1127, 1128 (8th Cir. 1996) (per curiam).

To state an actionable claim for relief, a plaintiff must allege a set of specific historical facts, which, if proven true, would entitle the plaintiff to some redress against the named defendant(s) under some cognizable legal theory.  See Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980) (although federal courts must "view pro se pleadings liberally, such pleadings may not be merely conclusory: the complaint must allege facts, which if true, state a claim as a matter of law").  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009).  The facts supporting a plaintiff's claims must be clearly alleged.  Federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." Stone v. Harry, 364 F.3d 912, 915 (8th Cir. 2004).

Here, the Court finds that the sketchy allegations set forth in Plaintiff's complaint do not state any actionable claim for relief against any of the named Defendants, with the possible exception of Defendant Dan Krippner.  As discussed below, the allegations in the complaint do not support any of the five claims that Plaintiff is attempting to bring, except for the Eighth Amendment claim that Plaintiff is attempting to bring against Krippner.

A. Eighth Amendment Claims

Plaintiff is attempting to sue Defendant Krippner for allegedly violating his Eighth Amendment rights by pinching him while he was in the shower area at MCF-SCL in July 2008.  Plaintiff is also trying to sue several other Defendants who allegedly taunted him after the alleged pinching incident, and he is trying to sue still other Defendants who allegedly failed to respond to his administrative complaints about the alleged pinching and taunting.

Plaintiff has failed to state any actionable civil rights claim against any of the Defendants who allegedly taunted him, because their alleged misconduct did not violate the federal Constitution.   While non-physical harassment of prisoners is obviously inappropriate and unprofessional, such conduct will not, by itself, support a federal civil rights claim. Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985) (abusive language and/or verbal harassment, is not, by itself, unconstitutional, and will not support a civil rights cause of action); Doe v. Gooden, 214 F.3d 952, 955 (8th Cir. 2000) (same).

It further appears that Plaintiff is attempting to bring an Eighth Amendment claim against several other Defendants who allegedly failed to take any disciplinary action against Defendant Krippner and others after the alleged pinching and taunting incidents.  However, Plaintiff has failed to plead an actionable claim against any of those Defendants, because he has not alleged any facts showing that any of them violated his rights under the Eighth Amendment.

If Plaintiff had alleged facts showing that any of the named Defendants had actually known in advance that Krippner posed a genuine danger to Plaintiff's safety and well-being, then Plaintiff might be able to maintain an Eighth Amendment claim based on a "failure to protect" theory.   See Young v. Selk, 508 F.3d 868, 872 (8th Cir. 2007) ("[i]n order to establish an eighth amendment failure-to-protect claim, a plaintiff must show that the prison official was deliberately indifferent to a 'substantial risk of serious harm'") (quoting Farmer v. Brennan, 511 U.S. 825, 828 (1994)); Nelson v. Shuffman, 603 F.3d 439, 446 (8th Cir. 2010) ("'an official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it'") (citations omitted).

Here, however, Plaintiff has not alleged any facts suggesting that any of the named Defendants actually knew, (or had good reason to know), that Krippner intended to pinch Plaintiff in the shower, or that Krippner otherwise posed a genuine threat to Plaintiff's safety and well-being.   Therefore, even if Krippner did violate Plaintiff's constitutional rights, his complaint still would fail to state an actionable Eighth Amendment claim against any Defendants other than Krippner himself.

Plaintiff may have been disappointed by the response to his administrative complaints about the alleged pinching and taunting incidents, but Defendants' allegedly inadequate response, by itself, is not "cruel and unusual punishment" barred by the Eighth Amendment.   A mere after-the-fact failure to investigate or discipline an allegedly errant correctional officer does not constitute an Eighth Amendment violation.   See George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation.   A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not.").   There are no allegations suggesting that any Defendant's inaction caused any injuries to Plaintiff. Therefore, Plaintiff has failed to state an actionable Eighth Amendment claim against the various Defendants who allegedly failed to respond to his administrative complaints about the pinching and taunting incidents.   See Clark v. Long, 255 F.3d 555, 559 (8th Cir.2001) ("'to establish a violation of constitutional rights' " in a civil rights action, " 'the plaintiff must prove that the defendant's unconstitutional action was the 'cause in fact' of the plaintiff's injury'"), (quoting Butler v. Dowd, 979 F.2d 661, 669 (8th Cir.1992), cert. denied, 508 U.S.

930 (1993)).[3]

B.  <u>FOIA Claim</u>

Plaintiff's attempted FOIA claim must also be rejected.  Plaintiff seems to believe

that FOIA gives him a right to obtain records from state agencies, such as the DOC, but

that simply is not the case. FOIA applies only to <u>federal</u> agencies; the law is wholly

inapplicable to state or local agencies, including the DOC.  <u>Grand Cent. Partnership, Inc.</u>

<u>v. Cuomo</u>, 166 F.3d 473, 484 (2nd Cir. 1999); <u>Pennyfeather v. Tessler</u>, 431 F.3d 54, 56 (2nd

Cir. 2005); <u>Dunleavy v. New Jersey</u>, 251 Fed.Appx. 80, 83 (3rd Cir. 2007) (unpublished

opinion), <u>cert</u>. <u>denied</u>, 552 U.S. 1243 (2008); <u>Blankenship v. Claus</u>, 149 Fed.Appx. 897,

898 (11th Cir. 2005).  <u>See</u> <u>also</u> <u>Shakopee Mdewakanton Sioux (Dakota) Community v.</u>

<u>Hatch</u>, Civil No. 01-1737 (ADM/AJB), (D.Minn. 2002), 2002 WL 1364113 at *6 ("'the plain

language of the FOIA precludes its application to state or local agencies'"), (quoting

<u>Mamarella v. County of Westchester</u>, 898 F.Supp. 236, 237 (S.D.N.Y. 1995)).  Because

Plaintiff's FOIA claim involves only state records sought from state agencies, he has failed

to plead a cognizable FOIA cause of action against any of the Defendants named in his

complaint.

C.  <u>"Loss of or Damaged/Destruction of Property" Claim</u>

Plaintiff's so-called "Loss of or Damaged/Destruction of Property" claim, (Complaint,

pp. 21-24), is not actionable for at least two reasons.  First, Plaintiff has not alleged that any

of the named Defendants actually deprived him of any of his property.  In fact, the

---

[3] It also should be noted that any supervisory Defendants cannot be held vicariously liable for any alleged misconduct of their subordinates, because the doctrine of respondeat superior is not applicable to civil rights claims.  <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 694 (1978).

allegations in the complaint indicate that several named Defendants tried to help Plaintiff recover his allegedly missing property.  The Court finds no allegations suggesting that any Defendant was personally responsible for the loss of any of Plaintiff's property.  For this reason alone, the Court finds that the third claim listed in Plaintiff's complaint does not state any cause of action on which relief can be granted.

In addition, even if Plaintiff had alleged that some particular Defendant(s) had deprived him of some of his personal property, his current complaint still would be inadequate, because he has not alleged any facts showing that any Defendant(s) violated any federal law or constitutional mandate.  Plaintiff may have intended to allege that some Defendant(s) violated his Fourteenth Amendment rights, by depriving him of property without affording him due process, but that is not actually alleged in the complaint.

Moreover, even if Plaintiff intended to claim that some particular Defendant(s) intentionally took his property away from him, (despite the total absence of any allegations to support such a claim), he still could not maintain a cause of action based on the Constitution's due process clause.  In Hudson v. Palmer, 468 U.S. 517 (1984), the Supreme Court held that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment, if a meaningful postdeprivation remedy for the loss is available."  Id. at 533.  This means that the requirements of the Constitution's due process clause are satisfied if there is a procedure available to a prisoner by which he can challenge an allegedly wrongful seizure of his property, after the seizure has occurred.  Thus, there can be no due process violation if the prisoner has been afforded a post-deprivation opportunity to contest the loss of his property.

10

Here, it appears on the face of the complaint that there was a prison grievance procedure available to Plaintiff, and that he had an opportunity to pursue his claims through that procedure.  (Complaint, pp. 22-24, ¶s 2-5, 7-19.)  The Supreme Court expressly noted in Hudson that a prison grievance procedure may serve as a "meaningful postdeprivation remedy" that would satisfy the requirements of the due process clause.  468 U.S. at 536, n. 15.  Relying on this observation, federal courts have consistently dismissed inmate due process claims stemming from property deprivations when a prison grievance procedure was available.  See e.g., Weldon v. Wickiser, No. 07-1312 (3rd Cir. 2007), 2007 WL 2050898 (unpublished opinion) at *1; Jones v. Burton, 173 Fed.Appx. 520, 522 (7th Cir. 2006) (unpublished opinion); Cavender v. Uphoff, No. 96-8067 (10th Cir. 1997), 1997 WL 602418 (unpublished opinion) at *1; Larue v. Jurgenson, No. 93-35175, (9th Cir. 1994), 1994 WL 5733 (unpublished opinion) at *2.  See also McDowell v. Jones, 990 F.2d 433, 434 (8th Cir. 1993) (prisoner barred from bringing due process claim for property loss where there was an adequate post-deprivation remedy available under state law).

The grievance procedure identified on the face of Plaintiff's complaint is a post-deprivation remedy that meets the requirements of Hudson v. Palmer.  While Plaintiff apparently is dissatisfied with the outcome of his grievance proceedings, he has not identified any procedural deficiency in those proceedings that could be viewed as a denial of due process.  See Jones, 173 Fed.Appx. at 522 ("[t]he adequacy of a postdeprivation remedy does not turn on the plaintiff's satisfaction with the outcome").  Because Plaintiff was afforded the manner and measure of due process prescribed by Hudson, he could not maintain a denial of due process claim, even if he had alleged that some particular Defendant(s) deliberately deprived him of his property.

11

D. <u>Second Due Process and Equal Protection Claim</u>

The fourth claim listed in Plaintiff's complaint, (Complaint, pp. 24-25), is also wholly inadequate.  Plaintiff alleges that on August 19, 2009, he "signed a waiver" that apparently caused him to be placed in segregated confinement for ten days.  (<u>Id</u>., p. 24, ¶1.)  Two days later Plaintiff allegedly submitted a kite to someone identified as "Defendant Lindell,"[4] in which Plaintiff asked to be removed from segregated confinement.  (<u>Id</u>., pp. 24-25, ¶ 2.) In that kite, Plaintiff allegedly indicated that he wanted to "withdraw the signed waiver and proceed with a due process hearing per DOC procedures."  (<u>Id</u>.)  Plaintiff allegedly sent a similar kite to Defendant Michelle Smith.  (<u>Id</u>., p. 25, ¶ 4.)  Both Lindell and Smith allegedly responded to Plaintiff's kites by informing him that prisoner housing assignments are "discretion[ary]," and that Plaintiff would not be removed from segregation.  (<u>Id</u>., ¶s 3, 5.)

Giving the complaint the benefit of liberal construction, Plaintiff appears to be claiming that he was kept in a segregated housing unit for ten days, without being afforded due process.  However, that is <u>not</u> an actionable claim for relief.

To state an actionable due process claim, a complainant must allege a set of facts showing that he was deprived of a constitutionally protected interest in life, liberty or property, without being afforded adequate procedural protections.  <u>Ragan v. Lynch</u>, 113 F.3d 875, 876 (8th Cir. 1997) ("[a] due process claim is cognizable only if there is a recognized liberty or property interest at stake"); <u>Orr v. Larkins</u>, 610 F.3d 1032, 1034 (8th Cir. 2010) (<u>per</u> <u>curiam</u>) (""[i]n order to prevail on a Fourteenth Amendment due process claim, [the plaintiff] must first demonstrate that he was deprived of life, liberty, or property

---

[4]  The caption of Plaintiff's complaint lists more than 40 named Defendants, but it does not include any Defendant named "Lindell."

by government action'") (quoting <u>Phillips v. Norris</u>, 320 F.3d 844, 846 (8th Cir.2003)).

Plaintiff evidently believes he has a constitutionally protected liberty interest in remaining

in the general prison population, (as opposed to segregated confinement), and that he

could not be deprived of that interest without being provided due process.

However, in prisoner civil rights cases, a constitutionally protected liberty interest will

be found, and the protections of due process will therefore come into play, only when the

prisoner has shown the type of unusual hardship, or dramatic departure from ordinary

prison life, that is contemplated in <u>Sandin v. Conner</u>, 515 U.S. 472 (1995).  In <u>Sandin</u>, the

Supreme Court held that a prisoner has not been deprived of a constitutionally protected

liberty interest warranting due process protection, unless he has suffered an "atypical and

significant hardship... in relation to the ordinary incidents of prison life."  <u>Id</u>. at 484.  <u>See</u>

<u>also</u> <u>Orr</u>, 610 F.3d at 1034 ("[t]o show he was deprived of a protected liberty interest, [a

prisoner] must identify conditions that impose 'atypical or significant hardship ... in relation

to the ordinary incidents of prison life'") (quoting <u>Sandin</u>, 515 U.S. at 484).  In <u>Moorman v.</u>

<u>Thalacker</u>, 83 F.3d 970, 972 (8th Cir. 1996), the Court of Appeals interpreted <u>Sandin</u> to

mean that prisoner due process rights are implicated only when there have been

"deprivations which work such <u>major disruptions</u> in a prisoner's environment and life that

they present <u>dramatic departures</u> from the basic conditions and ordinary incidents of prison

sentences."  (Emphasis added.)

In this case, Plaintiff has not pleaded an actionable due process claim, because he

has not alleged any facts showing the kind of atypical prison conditions that <u>Sandin</u>

requires.  It is well settled that, for due process purposes, assignment to segregated

confinement is considered to be a normal part of prison life.  Therefore, limited periods of

13

segregated confinement are not considered to be an "atypical and significant hardship" that can give rise to a protected liberty interest. The Eighth Circuit has repeatedly held that "a demotion to segregation, <u>even without cause</u>, is not itself an atypical and significant hardship'" that implicates a protected liberty interest. <u>Orr</u>, 610 F.3d at 1034, quoting <u>Phillips</u>, 320 F.3d at 847 (emphasis added). <u>See</u> <u>also</u> <u>Portley-el v. Brill</u>, 288 F.3d 1063, 1065 (8th Cir. 2002) ("[w]e have consistently held that administrative and disciplinary segregation are not atypical and significant hardships under <u>Sandin</u>"). Because Plaintiff did not suffer an atypical and significant hardship when he was placed in segregated confinement, he was not deprived of a protected liberty interest, and he was not entitled to the procedural benefits of due process. Therefore, Plaintiff has not pleaded an actionable due process claim based on his segregated confinement.[5]

E.  <u>Freedom of Religion Claim</u>

Finally, Plaintiff claims that during the month of May 2008, he was deprived of his constitutional right to "religious expression." However, the meager allegations offered in support of that claim, (consisting of only two short paragraphs), are plainly inadequate. Plaintiff alleges that he sent a kite to Defendant Adair, informing her that he was being

---

[5]  The heading of Plaintiff's fourth claim includes the phrase "equal protection," but that term does not appear in any of the allegations presented under that heading. There certainly are no allegations suggesting that any named Defendant treated Plaintiff differently than other similarly situated prison inmates; nor are there any other allegations that could support any conceivable claim based on the Constitution's equal protection clause. <u>See</u> <u>Klinger v. Department of Corrections</u>, 31 F.3d 727, 731 (8th Cir. 1994) (to sustain an equal protection claim, plaintiff must show that he belongs to a group that has been treated less favorably than others who are "similarly situated"), <u>cert</u>. <u>denied</u>, 513 U.S. 1185 (1995); <u>see also</u> <u>Seltzer-Bey v. Delo</u>, 66 F.3d 961, 964 (8th Cir. 1995) (equal protection claims are properly dismissed when the plaintiff has not "allege[d] any facts to show that he was treated differently from other inmates because he belonged to a protected class").

denied certain unidentified "religious items" for "his practiced Wiccan religion."  (Complaint, p. 25, ¶ 1).  Defendant Hobson allegedly delivered a response from Adair, which allegedly denied Plaintiff's "request for a religious bag that is also used by the Native Americans but with different herbs and items."  (Id., ¶ 2.)  Based on these two vague allegations alone, Plaintiff is attempting to sue Defendant Hobson, (and apparently no one else), for "discriminat[ing] against" him based on his religion.  (Id.)

Plaintiff has failed to plead an actionable freedom of religion claim, because he has not adequately identified the specific religious items at issue, he has not described any religious tenets that require him to possess those items, and he has not otherwise explained why he allegedly must possess those items in order to practice his religion.  Furthermore, Plaintiff has not alleged any facts showing that Defendant Hobson was personally responsible for depriving him of any essential "religious items."  Therefore, Plaintiff has failed to plead an actionable "religious expression" claim against Defendant Hobson (or anyone else).

## III.  CONCLUSION

For the reasons discussed above, the Court finds that Plaintiff's complaint fails to state any cause of action on which relief can be granted, with the possible exception of an Eighth Amendment claim against Defendant Dan Krippner.  For now, Plaintiff will be allowed to continue to prosecute his Eighth Amendment claim against Defendant Krippner, and Krippner will, of course, be allowed to defend himself against that claim as he sees fit.  However, the Court will recommend that all of Plaintiff's other claims, against all other Defendants be summarily dismissed pursuant to § 1915(e)(2)(B)(ii).

## IV. RECOMMENDATION

Based upon the foregoing and all of the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

All claims presented in Plaintiff's complaint, except for Plaintiff's Eighth Amendment

claim against Defendant Dan Krippner, be **DISMISSED** pursuant to 28 U.S.C. §

1915(e)(2)(B)(ii).


Dated: September _27_, 2011

*s/ Franklin L. Noel*
FRANKLIN L. NOEL
United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **October 12, 2011**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.