UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Dezeray M. Roblero-Barrios,   Civil No. 11-2281 (MJD/FLN)

    Plaintiff,

v.   **REPORT AND RECOMMENDATION**

Dan Krippner,

    Defendant.
_____

Plaintiff, *Pro Se*.
Gina D. Jensen, Assistant Attorney General, for Defendant.
_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on Defendant's Motion for Judgment on the Pleadings or, in the alternative, for Summary Judgment (ECF No. 34).[1] This matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons set forth below, the Court recommends that Defendant's motion be **GRANTED**.

## I. BACKGROUND

In 1998 Roblero-Barrios[2] was convicted of second-degree criminal sexual misconduct for attempting to molest a 6-year old boy in a K-mart restroom. Gau Aff. at 4, ECF No. 39. He later admitted to victimizing four other minors at various times, but then recanted all but one admission. *Id.* at 18. In 2001 Roblero-Barrios was committed to the Minnesota Sex Offender Program (MSOP)

---

[1] Roblero-Barrios did not submit a memorandum in opposition to Krippner's motion, nor did he request an extension to file one. The Court will analyze Krippner's motion based on the record before it.

[2] Roblero-Barrios changed his name from Wesley Mullins in 2005.

in Moose Lake as a "sexually dangerous person" and "sexually psychopathic personality." *Id.* at 6. Six years later, in 2007, Roblero-Barrios physically assaulted two MSOP Security Counselors. *Id.* at 7. He was charged with two counts of fourth-degree assault, convicted, and sentenced to one year of imprisonment. *Id.* at 7-8. In 2008 Roblero-Barrios was admitted to Minnesota Correctional Facility at St. Cloud (MCF-SCL), which serves as the intake facility for all adult male offenders in Minnesota. *Id.* at 2. He was transferred to the Stillwater Correctional Facility (MCF-STW) in 2009, where he remains incarcerated today. *Id.*

### A.    Procedural history

In his August 2011 complaint, Roblero-Barrios brought five separate claims against approximately 40 past and present Department of Corrections (DOC) employees. ECF No. 1. The Court recommended that all but one of the claims be dismissed, and that report and recommendation was later adopted. ECF No. 5 and 6. Thus, the only claim remaining is Roblero-Barrios's Eighth Amendment claim against Krippner, a correctional officer at MCF-SCL.

### B.    The 2008 shower incident

The incident that prompted Roblero-Barrios's Eighth Amendment claim occurred at MCF-SCL in July 2008. Roblero-Barrios alleges that on July 19 Krippner escorted him to a shower facility. Enroute to the shower, Roblero-Barrios alleges that various other DOC staff were laughing and pointing at him. ECF No. 1, 13. After he finished his shower, Roblero-Barrios alleges that Krippner entered the shower area, handcuffed him and "grabbed [his] upper right bicep . . . pinched and twisted the [his] skin" and said "So, you like to assault Correctional Officers and little kids, well this is what you get although you deserve a lot more than that." *Id.* As Roblero-Barrios was being escorted from the shower back to his cell, he alleges that a DOC staff member began whistling the

Sesame Street theme song and then engaged in a verbal interaction with Krippner that alluded to sexual molestation of young children. *Id.* Roblero-Barrios alleges that multiple staff then began to laugh and taunt him by making cat call sounds directed at him. *Id.* The following day, Roblero-Barrios noticed large bruises on his right bicep area where Krippner allegedly pinched him. *Id.* at 14.

### 1. Roblero-Barrios's efforts to report Krippner's alleged use of force.

After noticing the bruises on his arm (on approximately July 20), Roblero-Barrios requested to speak with Lieutenant Diane Johnson, the Assistant Living Unit Director. ECF No. 1, 14. Johnson initially refused to see Roblero-Barrios and instructed him, through another staff member, to file a grievance form (a "kite"). *Id.* Roblero-Barrios "immediately" submitted several kites.[3] *Id.* Several days later, Johnson requested to see Roblero-Barrios in her office. *Id.* After Johnson allegedly berated him for requesting to see her after the incident, Roblero-Barrios told her about what happened and requested that photos of his arm be taken by the Office of Special Investigation (OSI). *Id.* On approximately July 21, Roblero-Barrios was informed that the alleged assault was "under investigation." *Id.*

### 2. Results of the official investigation into Krippner's alleged use of force.

On approximately July 23 or 24, several DOC staff arrived at Roblero-Barrios's cell to take photos of the bruises on his arm. *Id.* at 15-16; Burg. Aff. at 3, ECF No. 41. Several days later, staff from the OSI took a written and taped report from Roblero-Barrios about the incident. ECF No. 1, 16. Approximately one month after the alleged incident, Paul Burgess, the MCF-SCL Corrections

---

[3] The three kite forms submitted as part of the record are dated 6/23/08. *See* Burgess Aff., Ex. B, ECF 41.

Program Director, interviewed all of the DOC employees allegedly involved with the incident. In his July 30, 2008 report, Burgess concluded that Roblero-Barrios's allegations were not substantiated for three reasons: (1) none of the DOC officers interviewed admitted to any knowledge of the incident; (2) Roblero-Barrios could not determine the exact date of the alleged incident, and expressed confusion about which hand Krippner allegedly assaulted him with; and (3) according to official log books, at least one staff member who Roberlo-Barrios said was present during the incident was not in the unit on either July 18 or 19. Burg. Aff., 6-7, ECF No. 41. The report also notes that Roblero-Barrios has a history of self-injury. *Id.* at 9.

## II. LEGAL STANDARD

Krippner moves for judgment on the pleadings, and in the alternative, for summary judgment. Because Krippner relies on matters outside of the pleadings, the Court will treat the motion as one for summary judgment. *See* Fed. R. Civ. P. 12(d); *Forest Park II v. Hadley*, 408 F.3d 1052, 1055 (8th Cir. 2004).

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or show "that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1)(A)-(B). "The court need consider only the cited materials, but it may consider other materials in the record." Fed.R.Civ.P. 56(c)(3). In determining whether summary judgment is appropriate, a court must look at the record and any inferences drawn from it should be made in the light most favorable to the nonmovant. *Anderson v. Liberty Lobby,*

4

*Inc.*, 477 U.S. 242, 255 (1986).

## III. LEGAL ANALYSIS

Krippner argues that Roblero-Barrios's suit should be dismissed as a matter of law because he failed to exhaust his administrative remedies, as required by the 1995 Prison Litigation Reform Act (PLRA). The Court agrees.

### 1. The requirements of PLRA § 1997e(a).

The PLRA provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this Title or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The requirement that all administrative remedies be "exhausted" has been deemed "mandatory" in order to promote efficiency and provide correctional institutions the opportunity to resolve internal issues before being sued. *Woodford v. Ngo*, 548 U.S. 81, 85 and 89 (2006). Exhaustion must be "proper" which means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits.)" *Id.* at 90 (internal citations omitted). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 91.

### 2. Minnesota DOC grievance policies and procedures.

The Minnesota DOC formal "Grievance Procedure" sets forth a number of administrative remedies available to all state-prison inmates. The specific policies that were in effect in 2008

outline three procedures available to all inmates. *See* Ebeling's Affidavit as Exhibit B, 5-8, ECF No. 38.

First, offenders "must" attempt to resolve any concerns informally via the kite system prior to pursuing the formal grievance process. *Id.* at 5. If the offender is not satisfied with the results of the kite process, he or she may begin the formal grievance process. *Id.* at 6. This involves submitting an "Offender Grievance" form, along with the kites previously submitted. *Id.* Formal grievances are investigated by a "facility grievance coordinator" who determines how the matter should be investigated. *Id.* Results of any investigation are submitted by the coordinator to the prison warden (or designee) who makes a ruling on the grievance and gives notice to the inmate. *Id.* Finally, offenders may appeal the warden or designee's decision to the central office grievance appeal coordinator, but must do so within 15 working days. *Id.* at 7.

### 3. Roblero-Barrios did not exhaust all available administrative remedies.

Krippner argues that Roblero-Barrios's claim was "grievable through the DOC's grievance procedure" and because he did not file "any" grievances pertaining to this issue, the claim must be dismissed. Def. Br. 14, ECF No. 37. The Court agrees. There is no record of Roblero-Barrios filing a formal grievance pertaining to the July 2008 incident. Ebeling Aff. 3, ECF No. 38. Although the kites he submitted led to an investigation of the alleged shower incident, he did not exhaust the next two steps of the DOC grievance process—the formal grievance and appeal process. Roblero-Barrios is apparently familiar with these procedures, having filed at least a dozen grievances while in DOC custody. *Id.* As such, his suit should be dismissed, without prejudice. *Woodford*, 548 U.S. 81 at 91; *King v. Iowa Dep't of Corr.,* 598 F.3d 1051, 1053 (8th Cir. 2010).

### IV. CONCLUSION

Based on the record before the Court, Roblero-Barrios did not exhaust the administrative remedies available to him prior to bringing this suit. In accordance with the PLRA, his claim should be dismissed. Because the other arguments made by Krippner are now moot, the Court will not address them.

## V. RECOMMENDATION

Based upon the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1) Defendant's Motion for Summary Judgment [ECF No. 34] be **GRANTED**;

2) This matter be **DISMISSED without prejudice**; and

3) **JUDGMENT BE ENTERED ACCORDINGLY.**


DATED: February 6, 2013                              *s/ Franklin L. Noel*
                                                     FRANKLIN L. NOEL
                                                     United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **February 21, 2013**, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.